Good morning, and may it please the court, my name is Cary Sandman, Assistant Federal Public Defender from the District of Arizona. My co-counsel, Amy Krause, is at council table. We represent Eric Mann, an Arizona prisoner convicted of first degree murder who is facing a sentence of death. I'd like to reserve five minutes of my time for rebuttal if I can. This case presents constitutional issues pertaining to both the guilt phase and the sentencing phase of the state of Arizona's capital proceedings. If I may, I would like to address the guilt phase issue first. The guilt phase issue poses the question whether Mr. Mann was denied his constitutional right to receive effective assistance of counsel when his counsel failed to recommend that he testify at trial. In the typical case, counsel's recommendation, whether a client should testify on his own behalf, would be considered virtually unchallengeable and presumed to result from counsel's reasonable professional judgment. But there are exceptions to this initial governing principle, and we submit that the presumption that counsel exercise reasonable professional judgment gives way in this case. At the commencement of Mr. Mann's trial, the prosecution and defense agreed on virtually all of the facts except a crucial few. That is to say, there was no dispute in the case that Mr. Mann had shot and killed Mr. Alberts and Mr. Buserto and then covered up the incident. The principal question the jury was asked to determine was whether Mr. Mann planned and premeditated the murder or whether he had acted in self-defense at the time of the shooting. Defense counsel gave a very brief opening statement of roughly eight pages at the beginning of the trial. And at the beginning of the opening statement, he asked the jury to consider this question, why did this happen? Why did this happen? And he answered the question when he told the jury, and this is at page 1868 of the record. Because time is short, maybe we should cut a chase with this. The right now to testify or to testify or not to testify is the client's right. The most a lawyer can do is advise. Unlike a lot of other things that happens in trial that ultimately are the decision of the lawyer, all the lawyer can do here is advise, right? And ultimately it's up to the client to decide whether or not to do it. At which point are you claiming trial counsel was constitutionally deficient in what should he have done? We know he advised his clients strongly not to. Should he have said nothing? Should he have advised them to testify? And at what point? I think that in this particular case, the pivotal moment in time is during the opening statement when the counsel tells the jury that they will hear evidence that when the transaction was taking place, this drug transaction that had been set up, that Eric saw Mr. Buserto make a move that made him believe, Mr. Mann believed, that he was going to be a victim of a drug rip-off himself. And he became frightened for his own life and then killed them both out of self-defense. And he also said... It's a slightly different argument, though. It sounds to me like what you're arguing is... I don't want to put words in your mouth. I just want to make... That he was ineffective in advising the jury, essentially, that Mr. Mann would testify, when in fact he was not going to put them on the stand or he was advising him not to. I think... That's sort of a different claim, isn't it? I think that deficiency, the constitutional deficiency, ultimately was recommending to Mr. Mann that he not testify after counsel had told the jury that they were going to hear evidence that Mr. Mann had cocaine to sell and after he had told the jury that they were going to hear evidence that Mr. Mann thought he was going to be victimized. Didn't Mr. Mann, at the post-conviction hearing, agree to testify that he had agreed not to testify? Your Honor, I don't believe... Well, I think what he said is that he followed his lawyer's advice. And as I think he was entitled to and should have, The question here is, was the lawyer's advice to Mr. Mann that he not testify, was that an objectively... Your Honor, I don't think he testified that he agreed with the decision. He followed his lawyer's advice. Yes, he did. But that still calls into question the primary issue that we've presented, which was, was the lawyer's advice to the client that he not testify, was that a negligent piece of advice given the fact that he told, had promised the jury that they were going to hear evidence that really had to come from Mr. Mann, that Mr. Mann was fearful he was going to be harmed, that Mr. Mann thought he was going to be a victim of a drug rip-off, that Mr. Mann... Or seeming to promise the jury that Mr. Mann testified. I mean, how can a lawyer put the client on the stand to commit perjury? I mean, according to the lawyer, Mr. Mann basically told him he planned it all out. Your Honor, that calls into question the state court's fact-finding in this case during... Well, it's always a treacherous thing to do. Yeah, well, we've, well... Well, no, I, you know, we regularly get divorced by the Supreme Court when we try to do that. Well, I think that there are, every circuit, every federal circuit and the U.S. Supreme Court has found, in certain cases, the state court fact-finding was unreasonable, and I think that the record here is compelling, I believe, that the state court ignored highly probative evidence that was central to the petitioner's claim, and the fact-finding was simply incorrect, objectively unreasonable. When the state trial judge believed the lawyer when the lawyer said, Mr. Mann told me he planned it all out, do you think that was unreasonable? I think that what makes the state court fact-finding unreasonable, Your Honor, is that the state court ignored overwhelming evidence that was inconsistent with its ultimate fact-finding. And in this particular case, as you know, the trial lawyer, just a few weeks before the trial, wrote his client a letter where he recommended that his client testify, because he was the only one who could testify in support of the fact that he saw Mr. Briseurdo move for his gun. That letter says to Mr. Mann, my strategy, it's a summary of his strategy for the trial. And is it clear that this letter was sent after the conversation, the claim conversation? Yes, because Mr. Sherman testified that the very first or second time he had met Mr. Mann, which would have been six, seven months earlier, that Mr. Mann had confessed. And this letter, if Mr. Mann had confessed his crime to this attorney, this letter would constitute a clear subordination of perjury, because the letter says you can help, your testimony can help with this defense, and I will never recommend that you not testify. That is a letter that... But we all know that there are often inconsistencies in the evidence, and here we had a trial judge who was entitled to substantial deference look at this, hear the testimony, consider this inconsistency, and come to the conclusion that, in fact, the fact that Mr. Mann did confess for meditation to his lawyer. What do we do with that? What we've done, of course, is we've relied on this court's decision in Taylor v. Maddox, and the very same thing... Brilliant opinion, I think. Not everybody. We've relied on that. Some people think it's funny. Really, what happened in this case is really essentially the same as what happened in Taylor. You had in Taylor a state court judge that heard the testimony from the defendant, heard the testimony from the police officers, and said, I believe the police. And what the court said in Taylor was that when we examine state court fact-finding, we look at the process, and when the state court ignores highly probative evidence that's central to the claim, that that can serve as a basis for finding the fact-finding objectively unreasonable. The lawyer never explained this letter. He was asked in the state post-conviction proceedings, how could you send a letter like that to a client if you thought they committed perjury? You sent a letter to a client saying we need your help, we need you to testify, I would never recommend you not testify. He never explained that. He said that he didn't want to put in writing in the letter to the client anything about this perjury. And that's fine and well, but it doesn't explain the fact or why a lawyer would recommend to his client that he take the stand. Is it clear that the lawyer told the jury that Mann would testify? What the lawyer told the jury was really two things that were in dispute in the case. The prosecution side of the case said there was no cocaine to sell. Mr. Mann had set this up as a robbery. The lawyer told the jury they would hear evidence that Mr. Mann had cocaine. Then he told the jury that they would hear evidence that Mr. Mann saw Ray make a movement that made him fear he was going to be a victim in the transaction, that he was going to be killed. None of that evidence was presented. And so when the jury went back to deliberate in this case, and we're relying on, we're not breaking new ground here, I don't believe a number of other circuits and state courts have addressed the identical issue and have recognized that when a lawyer promises pivotal defense evidence to a jury and then doesn't present that evidence and he has no objectively reasonable basis for not presenting that evidence, in this case it would have to have come from Mr. Mann because he was the only other witness in the room at the time of the shooting. He was the only one who could have testified that he had cocaine to sell, that he saw Mr. Brisetto go for his gun. So the jury would have had to have known when they went back to deliberate that he was the one that the lawyer was talking to. The lawyer didn't promise to put him, didn't explicitly say that. Well, he did argue in closing that circumstantial evidence showed that the gun was available to the decedent. He argued circumstantially that it was self-defense. He did, in fact, make that argument in closing. He had some very strong evidence that this crime was not a premeditated crime. But, and I'm quoting the Anderson case, and I think this is mentioned in the Uber case, little can be more damaging than the failure to produce important evidence that has been promised in an opening statement, especially when the evidence is so central to the defense. And nothing happened during the course of this trial that would have warranted the lawyer from not fulfilling those promises to the jury. Do we have a Supreme Court case that says it's ineffective assistance of counsel to advise a client not to testify? No, Your Honor. I think that the test is whether- Do we have any circuit cases? Yes, we have the Uber case, we have the Anderson case, we have the Liebach case. A number of circuits have addressed this particular question and have said that once a lawyer has made promises to the jury- No, no, but that's a little different. That's a little different. That's why I think it's a different theory, because you have a situation where you make promises to the jury that you can't keep. That's a different theory than advising the client not to testify. The two are independent of each other. You can make promises you don't keep with respect to other witnesses. The Hampton case- I had a case from the Eastern District recently where the lawyer made lots of promises about witnesses to testify and never put any of those witnesses on the stand, including the defendant. But that's a different theory than advising the client not to testify. And that can be true whether the lawyer promises the jury anything or not, right? If it's a case where the client should testify and the lawyer advises them not to. So I'm just wondering, do we have any cases that say that that advises itself in effective assistance counsel? Because we have that last missing piece, which is that unlike a lot of things that a lawyer does that ultimately the lawyer has the last call on, you've got the ultimate decision in the hands of the client. And I'm just wondering whether just giving that kind of advice has been held to be enough. I don't think that that case exists, and we're not arguing that that should be the law applied to this case. In the Hampton case and the Uber case, the Seventh Circuit and the First Circuit did say that it was ineffective not to recommend the client to testify after the lawyer promised the jury that the defendant would testify. So we have those cases. But I don't think there are any cases that say just in sort of an abstract sense that it would be ineffective to recommend that a client testify or not testify. We would agree that that's the strategy that should be left to the lawyer. Our contention is that in this case what the lawyer did was extremely damaging and there was no reason or objectively reasonable basis for the lawyer not to fulfill those promises because he would have known at the beginning... Did you claim as you've presented it was exhausted? Oh, yes. As you presented it. I haven't gone back and checked. I think... Is the ineffectiveness not presenting the defendant after he's promised the jury or is the ineffectiveness promising the jury when you know he's not going to testify? Or is there a difference there? I think that the ineffectiveness sort of fulminates at the time he recommends not to put the client on the stand after making those promises to the jury. When it's pivotal defense evidence that only could come from the client. That is extremely harmful. I mean, that's... Well, if he'd made the decision not to put the client on the stand or he and the client together had made that decision, then your theory would be somewhat different, although basically the same. Yes, exactly. The ineffectiveness is in telling the jury that he's going to testify when you know he's not. Correct. And if it were correct that he knew that he would not put the client on the stand because he would have to withdraw from the case, if that was correct, then it's hard to see how he could have told the jury that he would testify. That's another, I think, fact that goes to show that the state court's fact-finding was so unreasonable because to believe that, if a lawyer did believe he had a perjurer client, that was Mr. Sherman's testimony, my client's going to perjure himself. Then he gets up in front of the jury and he says, you're going to hear there was cocaine to sell, you're going to hear Mr. Mann was fearful, you're going to hear that Mr. Mann thought he was going to be robbed. That's even worse. If the lawyer made that kind of opening statement, knowing his client was a perjurer, I mean, he's offering the perjurer testimony in his opening statement, which, of course, would be highly improper. I think that... Did the lawyer testify as to when it was determined that Mr. Mann would not testify? Yes. He said that he knew from nearly day one that he could not put him on the stand, that he might have to withdraw, that he knew that from the very beginning of the case, which was either untrue or, as we suggest, just the product of a very, very, very poor memory. We cited to the court portions of the transcript where he testified where he was very hazy. His recollection was very hazy. He wasn't sure whether he was conflating his memory with that of what other people had told him. And I think that Taylor... I've not found a case that really is more analogous in the Taylor case than this case in terms of the unreasonableness of the fact-finding. And I believe that the cases we cited from the First Circuit and the Seventh Circuit support our argument, which is making these types of promises that could only come from the defendant and having no reasonable basis to shift course is ineffective. Did the court make any factual finding as to whether he promised the jury that Mann would testify? There's no... The state court made no fact-finding with respect to that. And I think that's something the court can assess from the record. Well, he didn't promise that he would testify. He promised there would be evidence. Correct. Right. That can only... Right, I understand. It may be a fine difference, but there is a difference. So I believe that the cases we cited from the First Circuit and from the Seventh Circuit do support the claim. There were four people present at the time of the crime, right? Yes. So there was Mann himself, the two victims, and the girlfriend, right? Correct. So when he says there will be evidence, it could be referring to the girlfriend. Not in this case, Your Honor. Well, because his theoretical model could be referring to her. He says in his own letter to the defendant, the letter where he recommends that the defendant testify, that the evidence could only come from him, that he could rise... I think he specifically makes a reference to the fact that Karen is going to testify contrary, in support of the state's theory, that this was a pre-planned, premeditated offense. What was the prejudice here? The major prejudice is... The counter... So we have to now consider what would have happened if the counsel had been effective, and that would have been what? The most damaging thing that occurred was that... No, no, no. I'm sorry. We now have to come up with an alternative theory. Had counsel been effective, something else would have happened and did happen. If counsel had been... He had two choices. He could have made a different opening statement. Well, I'm asking you, what is your theory as to the counter? What's your best theory? What should have happened is he should have fulfilled his promises to the jury and presented his testimony to explain exactly what happened. So Klein gets on the stand and testifies. He testifies that four people, armed men and an armed woman, come into a very tiny room, that everyone in that room has a loaded weapon at the ready, that there is two and a half pounds or kilos of cocaine in that room, that Mr. Biserto, who was not supposed to be there, comes into the house. No one knows whether he's a narc or who he is. It turns out later, the medical examiner finds out he's had cocaine in his system, so he's agitated. Mr. Mann would have testified that he saw Mr. Biserto reach for his gun, or what he thought was reaching for a gun, and then he shot. After he saw Mr. Biserto go for a gun, he saw Mr. Albers go for his gun, and he shot and killed him. And then he was frightened and he hid the bodies. He would have testified that he did have cocaine to sell there, that it was a tragic thing that occurred, but it was done because he was in fear for his own life. He would have testified, and the evidence submitted to the jury would have shown... How would he have been impeached? The court had sanitized one prior conviction, so the jury would have been told he had a felony. There wasn't any other felony conviction record. I think his girlfriend would have testified that he had been abusive toward her, and that's why she called the police and reported this crime. But the jury also would have heard, and they did hear at this trial, in terms of lack of premeditation, that Mrs. Miller, Carrie Miller, was standing right behind Mr. Biserto. Not a place you would have stood if this had been a preplanned offense. And when she was asked at the trial, why were you standing there, she smiled. Why would you be standing there if this was a preplanned offense? She smiled. He had no preplan to remove the body. She ran out of the house after the shooting and took him an hour to find someone to help him do that. She smiled in the stand? The record shows that she smiled. Right. And the defense got the point of that out in closing, right? He did. And, you know, he would have had a much stronger case for lack of premeditation if he hadn't made false promises to the jury at the beginning of the case. If you credit his testimony, that is the fair fact that, in fact, it would have been unethical to put him on the stand, how could you have put him on the stand? He couldn't. No. If you credit his testimony, you could. You know, we agree with that. So if you credit his testimony, I suppose your theory is what he should have done was withdraw at the onset. Well, certainly if you credit his testimony, he shouldn't have been up in front of the jury telling them they were going to hear evidence that cocaine was in the room and that Mr. Mann was in fear for his life because he saw Mr. Absurdo make a movement. There still is, after making that statement, that was extremely damaging even if Mr. Mann had confessed to the crime. It was a fatal blow to the premeditation argument that he had developed and that could have been presented on this record. You can't, I mean, every lawyer knows you can't come in front of a jury and promise the most pivotal defense facts in your case and then not present them without any justification or any reason for doing so. You're down to about four minutes. Do you want to talk about any of the penalty issues? I guess very briefly, Your Honor, on the sentencing. There's a sentencing ineffective assistance claim in this case. This is a case where the lawyer acknowledged really just prior to the sentencing what his obligation was and that was to conduct a full investigation of Mr. Mann's background. So we know in this case that was the strategy. The lawyer didn't really fulfill that self-imposed strategy. He never interviewed Karen Miller, who was a key prosecution witness, who provided evidence not just at the guilt phase, but her testimony was going to be used to establish an aggravator. What good is she going to provide here? Well, what happened, and the lawyer knew this because he made a reference to it in the closing argument in his case, is that Mrs. Miller was attempting to provide mitigation assistance to Mr. Mann. She wrote a letter to the trial judge for Mr. Mann favoring a life sentence. So the lawyer knew this wasn't just somebody who was going to be harmful to me, although he knew that she was trying to help and never contacted her. And, of course, if he had, he would have learned the details, more of the details of a severe accident that Mr. Mann had in 1985, which led to the discovery of the nature of those injuries, including head injuries, and ultimately led to the discovery that Mr. Mann is organically impaired. So by the time the case got to sentencing, the state court judge lacked evidence that Mr. Mann had organic impairments, number one. He had a diagnosis of antisocial personality disorder, a diagnosis that shouldn't be made until organic impairments are ruled out. So he had a deficient diagnosis or inaccurate diagnosis of antisocial personality disorder. And he also had, the state court sentencing judge had a clear misunderstanding of Mr. Mann's character, because he found that Mr. Mann was incapable of remorse, because Mr. Mann didn't show remorse after this 1985 accident where two people were killed. That was a tragic misunderstanding by the sentencing court, because the hospital records for that accident demonstrated that Mr. Mann was suffering a grief reaction and had quite a bit of remorse. So the sentencer in the case had a gross misunderstanding, at least of Mr. Mann's psychological issues and his ability to show remorse. And I think that influenced the sentence. I would still like to reserve a very short amount of time that I have left. Okay, thank you. Good morning. May it please the court, I'm John Todd. I represent the director of the Arizona Department of Corrections in this matter, the appellee. Judge Kaczynski correctly identified the legal issue in this case, as far as Claim 1, and that is, was the trial court's finding unreasonable, objectively unreasonable? It's factual finding. And as I understand, the issue below was Mann was claiming that his attorney kept him from testifying. As Judge Thomas pointed out, his attorney, Mr. Sherman, didn't, in the opening statement, tell the jury that Mann was going to testify. And if you look at the second page of the letter that was written the day before, I mean, the month before the trial at ER 1932, it's very clear that he is going over the options of the pros and cons of Mann testifying, and says outright that it's Mann's decision whether or not to decide to testify. The trial judge heard... Did he tell him that if he did testify, he'd have to get another lawyer? He had, not in the letter, but prior, from his testimony, and Sherman was, Mr. Sherman was not hazy on the fact that what Mann told him initially, because it surprised him, was unlike any other client he had. And he had told him beforehand that if you decide to testify, then I'll have to withdraw. He knew before the trial that he was not going to present Mann as a witness. He knew that if Mann decided to testify, that he would have to... He was not going to present Mann. He would have to withdraw. He would not present Mann, is what he knew. Pardon? What he knew was that he would not present Mann, and that if he withdrew from the trial at the outset, they would have to find another lawyer. If at the point Mann made the decision to testify... I didn't ask you about that. I just said he knew that he would not present Mann. Yes, that's absolutely correct. Did he ask the judge for an instruction if Mann testified? No, not that I'm aware of. Whether an instruction that if he didn't testify, you mean? No, no, no. I thought there was an instruction that he requested. Right, there was an instruction that he requested that the fact that he doesn't testify shouldn't be held against him, if we're talking about the same thing. All right, I'll look for that. But he told the jury there would be testimony. He said there would be evidence, and he explained... Explained what? I'm sorry. How he was developing that evidence, and the state court judge heard his testimony and heard Mann's testimony and made a credibility decision, which this court reviews for whether or not it's objectively reasonable. Did he present the testimony? Pardon? Did he present the testimony that he promised the jury he would present? What testimony were you talking about? He did not tell the jury that Mann was going to testify. No, no, I understand. What did he tell the jury about the evidence that would be presented? He, what he told, I'm not specifically sure as to what the opening statement says concerning the evidence, but what he told, explained to Mann is how he was going to draw these inferences. And, in fact, the trial court gave lesser-included instructions and gave instruction on self-defense justification. So he was able to convince the trial court at least there was sufficient evidence to warrant those instructions. But the factual issue was whether or not... If you tell the jury you'll hear evidence of self-defense, what was that evidence of self-defense? Who was in a position to provide it other than Mann himself? He was using the statement that he told the person who helped him with the bodies as to indicate that it wouldn't have been planned because he had no way... You said he twice, and you mean different people. He, the lawyer... Oh, I'm sorry, Your Honor. I got confused there. You asked me about the evidence. Sherman, the lawyer, tells the jury you will hear evidence that this was a drug deal gone bad and this was a case of self-defense. That's essentially what he told the jury. Right. What was that evidence? Okay. It was... One inference was from the person who helped dispose of the bodies. And the argument was that he wasn't prepared to get rid of the bodies to begin with, and when he talked to him, he said he had to do it. He had no choice. Inference being that... Once again, you used he and him to refer to different people. Why don't you just put names on them so that... I apologize. So there's Sherman, there's Mann, the defendant, and then there's the body carrier. What was his name? I don't recall. Carlos? Yeah. Let's call him Carlos, okay? Okay. Okay, so... So Mann... So Sherman used the fact that Mann had not lined up Carlos prior to the drug rip-off as evidence of this was sort of a spontaneous thing. Mann... Actually, he didn't have a body carrier in place. He didn't have a pre-planned... Before he had bodies. Right, exactly. Sort of like if you're giving a party, you know, you order your catering ahead of time or something like that. Right. It's pretty weak, right? I mean, he doesn't know whether he's going to be able to pull off any bodies, so... He didn't dig a grave, either. Of course, an attorney is stuck with the facts that he's given. Right, but he doesn't... You know, when he stands up and he says, you will hear evidence of self-defense, it sounds an awful lot like, you know, Mr. Mann will get on the stand and tell you he was just defending himself. That's sort of what it sounds like. He was trying to walk a fine line because it ultimately is Mann's decision whether or not to testify, and he doesn't have to make that decision until the defense case where... Did Sherman ever tell the trial judge that Mann would be his only witness? I believe he did. And he knew that wasn't true? No, he didn't. He didn't know at the point he told the trial judge that. How... He knew... When did this occur? How soon before trial? At some point prior to trial or maybe during the initial part of the trial, but... And he knew that wasn't true? No, he didn't know that wasn't true. He wouldn't represent him if that's what he did, if Mann testified. That's... He knew it wouldn't be his witness. It's true. If Mann decided to testify, he would withdraw. Mann would... Why did he tell the judge that Mann would be his only witness? Because he was the only person that Mr. Sherman would have as a witness if Mann decided to testify. It's not for me, though. If that had occurred, if under your theory and I guess Sherman's testimony that Mann had insisted on testifying, at that point he makes a motion to withdraw his counsel. Yes. And it's... Let's say it's granted. Yes. Then there's a mistrial. Yes. So it all seems rather odd to me. I mean, there's not really a point he could do that without blowing up the trial. The only... It seems to me that if he had... I mean, it just doesn't make much sense because if he had decided this as a matter of ethical obligation, he should have withdrawn long before the trial and not let her believe that... I mean, if you tell the judge you're going to put on a witness and say, well, now I'm going to have to withdraw and we have a mistrial. It's not his decision as to whether or not... Under no circumstances would Mann be his witness. Pardon? When he told the judge that Mann would be his only witness, under no circumstances would that be true because Mann would not be his witness. I understand, Your Honor, what the point that you're trying to make. I think... I'm not trying to make... Well, I think the fair statement is that Mann indicated that he wanted Sherman to be his attorney. He had trust in Sherman. He wanted Sherman to be his attorney. He... But ultimately the decision whether to testify was Mann. That's not what I'm asking you. I'm asking you whether he lied to the judge. He did not lie to the judge. When he told him that Mann would be his witness. He knew Mann would not be his witness. He did not know at the point he told the judge that whether or not Mann would testify. He knew that Mann would not be his witness. It is correct that he knew that Mann would not be his personal witness. What does his mean if it's not personal? Did he mean that Mann would be a witness in some other trial handled by some other lawyer? No, it meant that if Mann decided to testify, the only witness the defense was going to put on was Mann. At that point, then he would... Then Mr. Sherman would have to withdraw and that would cause a misfire. That's one of the most unbelievable theories I have ever heard. Well, it's an odd thing, wouldn't you say? I mean, because Mann under that scenario would never have testified. There's no possibility Mann was going to testify at that trial. Why is that, Your Honor? Because if he had decided to testify, Sherman would have withdrawn and there would have been a mistrial. No testimony. Right? That is correct. So there was no possibility at all, if you believe the story, that Mann would have testified ever at that trial. Your Honor, I'm sorry. No, I mean, I just don't see... Maybe you can help me, but I don't see any possibility that Mann was ever going to testify. First, he was not going to... He had the choice not to testify. He could have elected not to testify as he did. Two, if he had elected to testify, his attorney under the facts would have been obligated to withdraw. There would have been a mistrial. They never would have testified at that trial. So when the attorney told the judge, Mann is my witness, he's going to be a witness, there was no possibility that was going to occur. Right? At that trial, yes. But what... Another theory, and the theory is that Mann never did tell his lawyer that he planned the crime, and that then it all falls into place. Everything else that happens, the letter that he sends the client is consistent, where he says, you've got to testify and do this. He's standing up and saying, I will hear evidence of self-defense falls into place. And his statement to the judge where he says, Mann will be my only witness. All falls into place. It's more probable, having the trial judge having heard both people testify, found that Sherman was correct in his statement because Mann wanted Sherman as his attorney. Mann, Mr. Sherman explained to Mann the choices he had to make. It was Mr. Mann's choice to make those. After the trial, after the trial, after he was sentenced to death, he wrote a letter to Sherman saying, I couldn't have had a better attorney. Now, if he was really infuriated about not being able to testify, if Sherman kept him from testifying, he never would have written that type of letter. In the letter prior to the testimony, the month before trial, Mr. Sherman lays out the choices for Mann, the pros and cons of testifying, but it's your decision. He made a choice. Let's talk about that letter. Okay. How can you send that letter to a client who's confessed to premeditation? I'm not sure. If the client has told you he planned a crime, how can you send him a letter saying, here are your choices, you can testify or not testify? Because as we know, if a client chooses to testify, the lawyer has to withdraw. Right, and Mr. Sherman knew that when he sent the letter. He didn't say that in the letter. And by the way, if you choose to testify, by the way, I'm going to have to withdraw because you already confessed to premeditation. He doesn't say that. It's a normal letter a lawyer sends to his client who has not confessed to give him his choices. But Mr. Mann really had no such choice if he, in fact, confessed to his lawyer, right? Well, if he wanted to keep Mr. Sherman as his lawyer, then his choice was not to testify. The letter was just incomplete. It said you have a choice, you can testify, you can not testify, and just forget to leave out. By the way, if you do choose to testify, you're going to have to get yourself a new lawyer. And you'll be committing perjury. And the reason a good lawyer would not put that in writing is because that's a confidential communication that is privileged, and he wouldn't want that to be in a letter that other people could see and get a hold of. So that's perfectly logical. Okay, now let me ask you a different question. I recognize that Sherman argues at trial circumstantially that it must have been self-defense, and there was some evidence of that. But in his opening statement, he does say this. So in a spontaneous act, he fired at both people and killed them both because he felt like he was forced to do so. He didn't plan it. He wasn't happy about it. He didn't premeditate it. How was he ever going to prove that he wasn't happy about it without man's testimony? I think that's reasonable. I mean, his argument would be, as he argued at the closing, that those are reasonable inferences that you can draw. And by the statement that he made to Carlos, that he had to do it. But the issue is, was the trial court's finding that Sherman prevented him from testifying, advised him not to testify, was that objectively unreasonable? And it clearly wasn't. Did he also ask for a jury instruction requesting that man's testimony be taken as that of a competent witness? I'm sorry, Your Honor? Yes, be taken as that of a competent witness. I don't know, Your Honor. Okay, well, unfortunately, as you do know, we have about 16 volumes, so they're not all here. But I think it's at page 1508 that Sherman asks for a jury instruction saying that man's testimony should be taken as that of a competent witness. Now, Sherman knew he wasn't going to testify that night, under your theory. My understanding is that the defendant has the decision whether or not to testify. He can make that decision. No, no, I'm asking what his lawyer knew, not unless you're saying that he thought he might make that decision in the middle of trial. I think, yes, I think the lawyer did everything he could to keep that decision open to Mr. Mann. Because it was, as he said in his letter, this is a death case, this is your decision. So he did everything he could. If he made that decision, there would be a mistrial. Because Sherman would withdraw. Yes. So they would never go to the jury. Because if there were a mistrial, there'd be no instructions to the jury. Right, but he didn't confide to the judge at that time. I know, but why did he ask for an instruction about Mann's testimony if he knew that Mann would never testify? Because he didn't know. No, he knew that they would never get to the jury if Mann testified. Because he would withdraw and there would be a mistrial. Why did he, I guess the other, I mean, just follow up, why was he preserving this fiction with the judge? Why didn't he tell the judge? Yeah, why was he preserving the fiction that Mann was going to testify, asking for a jury instruction on this and carrying on as though this was going to happen? Because he wanted to keep the client's decision open until the last minute. I mean, to the point where the client had to make the decision. Let me ask you this then. Do you think it was ethical for him to present a defense that he knew was false, even without Mann's testimony? I, speaking, I've never been a defense attorney. I don't know how they view their ethical obligation in terms of, he did not offer any false evidence. He tried to use reasonable inferences from the evidence that he had. His client wanted him to represent him. His obligation certainly was to test the state's case. You know, in my view, it's a closed line when you're trying to put forward sort of an affirmative type defense. Well, let's say we knock out the state court's finding that Mann confessed to his lawyer. Let's say we just overturn it. What's the next step? What flows from that? Do you lose or is there more? Well, you would have to find that somehow that there was clear proof. Don't tell us how to do it. I know how to do it. I don't need you to teach me how to do it. Absolutely. Just assume it's done. Okay. So don't waste any time educating us on how to do it. Believe me. If it's done, it's going to be done properly. So now let's take it from the next step. So I'll give you a chance to argue from there. If you don't want to argue, if you want to hang your entire case on the other thing, that's fine. We can go on to some of the other issues. But let's say you lose on this issue. We find that the state court, what's it called? State superior court. Superior. The superior court judges finding that man confessed to his lawyer, premeditated his lawyer. Let's say we find that to be unreasonable under Taylor. So let's say that's where we are in analysis. Do you have any arguments left on this issue? What? Surely you've thought of this question, right? It occurred to you that you might, somewhere in your moot court, somebody asked you this question. If not, whoever was mooting you on this didn't do a very good job. Well, let me try to help you out here. I mean, then what we have is a normal case of a lawyer who does not have a confession from his client, and still many lawyers, most lawyers that I know, as far as I know what defense lawyers do, most lawyers tell their clients, don't testify. You can't help yourself. You can only hurt yourself. That's what lawyers do, by and large. It's a very rare case I've seen where defense lawyers advise clients to get on the stand. First of all, they've got lots of stuff they can be impeached with. In this case, he had a felony. I don't remember what his felony was, but something like that. There was some felony. And second of all, juries tend not to believe defendants because they know they get on the stand  or at least the jury assumes they're going to lie, so it doesn't count so much. You can get on the stand and hurt yourself. So let's say we're at that point. We're just in a situation where this is a regular lawyer who, just like every other lawyer, most other lawyers just tell this client, don't get on the stand. Don't testify. Let's say that's where we are in the analysis. Do you lose? Is that an ineffective assistant counsel? For him, for him to just advise a man without a confession, don't testify. Would that be ineffective assistance? Yeah, that's the question. Boy, whoever Moots caught with you really did a poor job. Whoever it is, you go back to tell them that they need to go back to Moots. Well, you have a little difficulty accepting just because the lawyer testified that's not what happened. His whole case is, no, that isn't what happened. So how are we going to say what would happen if he was lying about all of that? No, but that's your job as an advocate. If you don't want to do it, it's okay. I can write an opinion without you. But I thought, you know, this is your chance to give me some input. So assume, in fact, there was no confession. The man did not confess to his lawyer. Everything else falls into place. If you assume that, everything else falls into place. Him saying you'll hear from the evidence falls into place. The letter he says you can testify, you cannot testify falls into place. The defense instruction that the defendant is competent to testify falls into place. The statement of the judge saying, if I have a witness, my only witness would be a man, all falls into place. So is it in effect a sense of counsel under those circumstances to advise a man not to testify? If he decides, based on what has happened in the case so far, that it's in his client's best interest not to testify, then that certainly wouldn't be an effective assistance of counsel. Let's assume you believe a man.  That he said, he didn't want me to take the stand because of my priors. Do you think that would be an effective assistance? No. Because you would say, your argument would be it falls within the strategic decision. It may be a dumb decision, but it falls within a strategic decision. Right. That's the oddity of the case, is that if you believe the client, your case may be stronger. But we're stuck, like Mr. Sherman was, with the facts he was given. It's an odd thing. I mean, there's another possibility, which is that he gets the confession, and he intends to put him on the stand and has a last-minute epiphany or maybe a conscience and says, I can't do this ethically. I mean, speculating, sure, that's possible, but that's not what he testified to under oath. I just don't see, if you've received the confession and you know that you can't produce the best case, which is defense, and that's your only reason you're not going to put the guy on the stand, it seems to me kind of ineffective not to withdraw before the trial. But I know that's not their argument. Right. And I'm not sure. Again, Mr. Mann, even after he was sentenced to death, was pleased with the job Mr. Sherman did. So, I mean, it was so much of this, instead of being, it was Mann's decision. It wasn't. That speaks not, doesn't speak to very much. Lawyers, clients often are pleased with their lawyers because they have no capacity to understand what a better lawyer would have done or what legal mistakes the lawyer would have made, and it's... Although Mr. Mann was pretty familiar with the criminal justice system prior to this. From the inside, huh? From personal experience. Okay. Do you want to talk about the penalty phase? The ineffective assistance. Yes, and in particular, the failure to do neurological testing and to get an independent mental health expert. Danny Jones. Yes. We will... That vacated decision. That vacated decision that I wrote, yeah. But, you know, the Jones may have priority on that, too. We'll have to sort that out. As you know, we have to draw new panel members, so that may be some time. Right. But at the moment, the Jones issue is open, obviously. Sure. Although our argument is that Pursuito doesn't make it a very open question, but... The trial judge, after he heard all this additional testimony from the neuropsychologist and the additional psychologist that wrote a report, found that that would not have changed his decision. And in this type of case, this Strickland type of case... Was it the same judge? Yes, that was exactly what I was going to say, that actually this case deserves triple deference, because not only is it Strickland deference... We'll give it a thousand percent deference. Okay. Deference, yes. That's how it is. Well, is it triple deference, or is there... You know, it's an odd situation, because you could say, as you've argued, this is the same person, and he said it wouldn't have made any difference. But actually, that's not the test. The test is would an objective fact finder, and he's hardly in a position to say objectively. And also, you have the reweighing of the Arizona Supreme Court to take into consideration. Well, we presume that he was objective when he first imposed sentence, and when he looked at it again. As judges, you're well aware of the judges. That's what they do. That's their business, to be objective. Well, you know, in Sauerland, we have... Come on, that's mean. No, no, no, no. But, I mean, the Sauerland injury, head injury, seems to me, and you can correct me, that was less severe than this one, wasn't it? The Sauerland? Sauerland head injury. I mean, my point being, if it were significant enough in Sauerland, and this one's certainly significant enough. I mean, this guy was knocked out for unconscious for hours. His personality changed and so forth. It seems to me that's stronger evidence than we had at Sauerland. Well, Jessica Zinsky's on Sauerland, too, so he can give a counterpoint. He was on the initial panel. I was also on PIN poster. Yes, you were. You're a wrong man, too. Well, maybe you're wrong, but affirmed by the Supreme Court. That's what I struggle with. If we're looking objectively over the whole plane of these cases, and in a case like Summer, why don't we say, look, the head injury there was significant enough that that's an IAC not to investigate it, and this is a greater head injury, as far as I can tell. Why wouldn't that be? Well, first of all, the standard review is different in this case than in Summer. Second, the trial judge, based on the evidence he heard during the testimony on the post-conviction relief proceeding, found, you know, I think he says in his order that, you know, man was violent before. He had shooting instances before the accident. He's had this afterwards. There's not – whatever subtle difference there are is not that significant that would have impacted my sentencing decision. Well, he did say that he was incapable of remorse, which seemed like a basis, at least, for his finding that he was a psychopath. And they had proof that he wasn't incapable of remorse if he had investigated. I don't believe the judge found Mr. Mann's comments going to remorse, and he made many of them prior to this death sentence that credible. Well, that's right. But he could have had evidence from the hospital records and from Karen that he was capable of remorse, that he was remorseful, which he would not have been had he been a psychopath. Okay. Thank you, Your Honor. You had a little time left for a bottle. Make it an even three minutes. How about that? Thank you, Your Honor. Your Honor, in answer to your question, what happens if the fact-finding is thrown out? I'm sorry. You referred to Judge Reinhardt. No. No, I'm sorry. Your question was – My apologies.  I'm sorry. Which of my main questions are you referring to? Your question was, well, what happens if the fact-finding is unreasonable? What happens with the case? Yes. And we've cited – I was more interested in the state's answer. Okay. All right. No, no, no. I think I know what your answer is, but you can go ahead and answer it. But I was wondering if the state had a backup. We've cited a number of cases that are a direct answer to your question at page 46 of the opening brief from a number of different circuits that have dealt with this question of, what's the consequence of a lawyer promising evidence that can only come from a defendant and then failing to present it without a good reason for doing it? He missed an opinion out of the Eastern District of California. That's right on point. Their recent opinion. Which was favorable to our argument, I believe. Fair enough. But I decided I didn't need to supplement because we had good enough authority. I did want to say one thing on the sentencing. But if you credit the client's testimony and so the lawyer's, then it follows into the area of strategic choice, doesn't it? The cases reject that notion when the lawyer makes the opening statement and he basically knows the landscape. He knows what the impeachment's going to be. He knows whether he thinks his client's going to be a good witness. He knows the strength of the other evidence on premeditation. At that point of the opening statement, he's got a decision to make. Either keep silent, argue the evidence that you're sure you're going to present, or commit. And he committed. And he committed to tell the jury that Mr. Mann had cocaine, contrary to the state's theory. Committed to tell the jury what Mr. Mann saw. Committed to tell the jury how Mr. Mann felt. Committed essentially to show the self-defense claim. Now, once you do that, you have to have some reasonable, objective reasonable basis for changing course. And that can happen in a trial. But it didn't happen in this case. Everything that would have, the lawyer knew everything he needed to know when he made the opening statement. And he made the commitment. And then he didn't produce. Had the ruling on impeachment, when did that come? It came before the opening statement. It came before the opening statement. Yes. The only other thing I'd like to say, with respect to the sentencing, is I do think this is a case where you can examine the result on a de novo basis. Because the trial judge applied, at the state's request, the trial judge applied a nexus test to the new mitigation evidence. The states filed a pre-hearing memo where they cited the Hoskin case, which is the Arizona Supreme Court's clearest pronouncement on the irrelevancy of mental health evidence unless you can establish a nexus to the crime. And the court, I think at the state's request, applied that test so that when in the state court's ruling, when he addressed this evidence of the organic impairments, said that Mr. Mann had failed to demonstrate causation to the offense. He did that at the request of the state with the state citation of Hoskin. So I think that you need not really concern yourself with the state court decision. I think you've now got to look at all of the new evidence that Mr. Mann presented and the evidence he presented at the initial sentencing and conduct the re-weighing yourself. And I would suggest that when you do that in a case like this, which was not a case necessarily predestined for a death sentence, that when you put it all together, this is a case where I think you can say there's a reasonable probability that if all of this had been presented to the sentencer at the initial sentencing, there would have been a different outcome. I don't know when the initial sentencer himself says, nah. It might be in some case, but I think... It's not a second judge saying or a judge looking at what a jury did and making a judgment about what they would have done. This is the same guy, the same judge saying, I've looked at it, I remember what I did, I looked at it now, the new stuff, it doesn't change my mind. If a state court judge had not decided the case contrary to the Strickland rule, I would be more apt to agree with you. But where the state court judge, at the request of the state, applies a causal nexus test to the mitigation, I think now it becomes a case you can decide. It was pretty clear that it wouldn't have made a difference to him, wouldn't you say? Well, if the Arizona Supreme Court tells you that you cannot consider the evidence of organic impairment unless it has a causal connection to the crime, and then you say, based on that unconstitutional rule, that that evidence doesn't make any difference to me. He reaches that conclusion by applying an unlawful principle contrary to Strickland. This time I'm going to apply a constitutional principle that's correct, and that's not going to matter to me either. But let me just go ahead. If that were the case and he said, I'm now following the law and it doesn't matter to me, I reach the same result, would that be the end of it? Or would our inquiry be whether the Arizona Supreme Court, in reviewing that decision and reweighing it? I think in this instance, Your Honor, you review the last reasoned decision of the state court, and that comes in the trial court because the Arizona Supreme Court issued a postcard denial of the state court post-conviction. That's not what I'm asking. I'm sorry. I'm asking if we were to say, before reaching the prejudice question, if we were to say, well, obviously this doesn't create any prejudice because we know what he would do. Is the question only what he would do, or is it also what the Arizona Supreme Court would do if he made an error the second time? I'm not sure. Your Honor, I'm maybe not understanding your question, but I think that if he... He's trying to help you. I'll give up. I believe that it would be your judgment. I think what Judge Levin had me suggesting is that the trial judge's own statement as to what he would have done is not all there is to the process because the Arizona Supreme Court makes an independent judgment, and the trial court can't tell us. He can tell us what he would have done, but he can't tell us what the Arizona Supreme Court would have done on re-weighing. Is a re-weighing denoble in the Arizona Supreme Court? Following a state post-conviction decision? No, it would have been direct appeal. Oh, from the original... If you go back to the original trial, and what the trial judge said is, Look, if this evidence had come in at the trial, it wouldn't have made any difference to me. I would have reached the same sentence. We don't know what... He can tell us that, and at that point it goes up on appeal to the Arizona Supreme Court. The Supreme Court does a re-weighing. Right. And now they do the re-weighing considering some of the evidence that previously was not included. Well, we can't really... I don't think we can speculate on what they would have done with it. They certainly could have... We have to speculate. That's what the prejudice analysis is. We don't have any way of avoiding speculation on that score. My question was, when they do the re-weighing, do they do a denoble or do they do it giving deference to the... As I understand it, it's a denoble re-weighing on the state Supreme Court's part. They have the ability to... So we'd have to determine whether or not on the re-weighing the Arizona Supreme Court would have reached the same decision. No, I think... There are two inquiries. One is would it have made a difference to the trial court because the trial court does the initial re-weighing, but I think Chief Justice Kaczynski and Taylor, you've got to look at the Arizona Supreme Court and what they would have done when they made a difference, don't you think? I don't think so, Your Honor. I have seen people trying to help you and you won't take it, but... I think that's... I think once you... The panel is up. Okay. We'll take away that shuttle. Okay. Thank you, counsel. Thank you. Thank you. Thank you.
judges: Kozinski, Reinhardt, Thomas